UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

LIONEL CADELIS,

                              **Plaintiff,**

             **v.**

GREYHOUND LINES, INC., and THE GOODYEAR
TIRE & RUBBER COMPANY,

                          **Defendants.**

------------------------------------------------------------------------X

GREYHOUND LINES, INC.,

                **Third-Party Plaintiff,**

             **v.**

MOTOR COACH INDUSTRIES, INC. and UGL
UNICCO, Formerly Known As UNICCO Service
Company,

                **Third-Party Defendants.**

------------------------------------------------------------------------X

**THIRD-PARTY
COMPLAINT**

**08 CIV 2439 (PKL)**

**[Related to
06 CIV 13371 (PKL)]**

**JURY TRIAL
DEMANDED**

SIRS:

       Defendant/Third-Party Plaintiff, **GREYHOUND LINES, INC.,** by its attorneys

**FABIANI COHEN & HALL, LLP** as and for its Third-Party Complaint, respectfully alleges

upon information and belief as follows:

       1.     At all times hereinafter mentioned the defendant/third-party plaintiff, Greyhound

Lines, Inc. ("GLI"), was and is a foreign corporation, existing under and by virtue of the laws of

the State of Delaware, with its principle place of business in Dallas, Texas and is authorized to

do business in the State of New York.

       2.     At all times hereinafter mentioned the third-party defendant, Motor Coach

Industries, Inc. ("MCI"), was and is a foreign corporation, existing under and by virtue of the

laws of the State of Delaware, with its principle place of business in Schaumburg, Illinois.

3.    At all times hereinafter mentioned the third-party defendant, MCI, was and is a foreign corporation authorized to do business in the State of New York.

4.    At all times hereinafter mentioned the third-party defendant, MCI, was and is a foreign corporation which by reason of its doing business in the State of New York is subject to personal jurisdiction in the State of New York.

5.    At all times hereinafter mentioned the third-party defendant, MCI, was and is a foreign corporation which is subject to personal jurisdiction in the State of New York by reason of its: transacting business within the State of New York; and/or supplying goods or services in the State of New York; and/or committing a tortuous act within the State of New York; and/or committing a tortuous act outside the State of New York causing injury within the State of New York and regularly doing or soliciting business, or engaging in other persistent course of conduct, or deriving substantial revenue from goods used or consumed or services rendered within the State of New York; and/or committing a tortuous act outside the State of New York causing the injury within the State of New York and expects or should reasonably expect its conduct to have consequences in the State of New York and derives substantial revenue from interstate or international commerce.

6.    The third-party defendant, UGL UNICCO (hereinafter "UNICCO"), was formerly known as UNICCO Service Company.

7.    UNICCO changed its name from UNICCO Service Company to UGL UNICCO on or about November 19, 2007.

8.    At all times hereinafter mentioned the third-party defendant, UNICCO, was and is a foreign corporation, existing under and by virtue of the laws of the State of Massachusetts, with its principle place of business at 275 Grove Street, Auburndale, MA 02466.

383185.1

2

9.      At all times hereinafter mentioned the third-party defendant, UNICCO, was and is a foreign corporation authorized to do business in the State of New York.

10.     At all times hereinafter mentioned the third-party defendant, UNICCO, was and is a foreign corporation which by reason of its doing business in the State of New York is subject to personal jurisdiction in the State of New York.

11.     At all times hereinafter mentioned the third-party defendant, UNICCO, was and is a foreign corporation which is subject to personal jurisdiction in the State of New York by reason of its:  transacting business within the State of New York; and/or supplying goods or services in the State of New York; and/or committing a tortuous act within the State of New York; and/or committing a tortuous act outside the State of New York causing injury within the State of New York and regularly doing or soliciting business, or engaging in other persistent course of conduct, or deriving substantial revenue from goods used or consumed or services rendered within the State of New York; and/or committing a tortuous act outside the State of New York causing the injury within the State of New York and expects or should reasonably expect its conduct to have consequences in the State of New York and derives substantial revenue from interstate or international commerce.

12.     That heretofore the plaintiff commenced the above entitled action in the United States District Court for the Northern District of New York, which was then transferred to the United States District Court for the Southern District of New York, asserting the liability of GLI for damages allegedly sustained by the plaintiff.  A copy of the Plaintiff's Amended Complaint is annexed hereto as "Exhibit A".

13.     The plaintiff generally alleges that on August 28, 2006 a bus (hereinafter referred to as "the subject bus") driven by Ronald Burgess, an employee of GLI, left the roadway of I-87 near Elizabethtown, New York and crashed.  The plaintiff further generally alleges that as a

383185.1

3

result of said accident he has been damaged.

14.    The plaintiff generally alleges, among other things, in his Amended Complaint that: the subject bus was a model DL-3 bus; the subject bus and model DL-3 buses had frangible roofs that were weak and frail and would collapse upon impact; the subject bus and model DL-3 buses did not have seatbelts installed for passenger use which would cause passengers to be thrown and possibly ejected and otherwise injured from the subject bus during an accident; and additional allegations as may be contained in the Amended Complaint.

15.    The plaintiff alleges, among other things, in his Amended Complaint that: the tires on the subject bus at the time of the subject accident were manufactured by The Goodyear Tire & Rubber Company (hereinafter referred to as "Goodyear"); one or more tires on the subject bus at the time of the subject accident (hereinafter referred to as "the subject tires") failed to operate as intended (paragraph 18); the subject tires had a history of failure (paragraph 29); the subject bus was negligently maintained and the subject tires were faulty (paragraph 30); the subject tires were negligently maintained (paragraph 42); there was "grossly deficient... inspection and maintenance" of the subject bus; and additional allegations as may be contained in the Amended Complaint.

16.    The plaintiff generally alleges that the subject accident was due to, among other things, improper and negligent service and maintenance of the subject tires.

17.    The subject bus and all of the parts and components of the subject bus (hereinafter collectively referred to as "the subject bus"), bore VIN #1M8PDMRA6YP052551.

18.    The subject bus was a 2000 MCI Model 102 DL3 bus/coach.

19.    MCI designed the subject bus.

20.    MCI constructed, assembled and manufactured the subject bus.

21.    MCI sold the subject bus.

22.    At the time of the August 28, 2006 accident involving the subject bus on I-87 in Elizabethtown, New York, the subject bus was in the same condition it was in at the time the subject bus left MCI's possession.

23.    The subject tires on the subject bus at the time of the subject accident were leased tires having been leased by GLI from Goodyear.

24.    Before the subject accident Goodyear entered into an agreement with Ogden Cisco, Inc. (hereinafter referred to as "Ogden"), dated August 30, 1995, pursuant to which, among other things, Ogden agreed to service and maintain tires that Goodyear leased to bus companies for use on their buses. GLI begs leave to refer to the August 30, 1995 agreement for its complete terms and conditions.

25.    On or about September 11, 1996, pursuant to an Assignment Agreement, Ogden Cisco, Inc. assigned the above-mentioned August 30, 1995 agreement and all obligations of Ogden Cisco, Inc. under the above-mentioned August 30, 1995 agreement to UNICCO Service Company. GLI begs leave to refer to the Assignment Agreement for its complete terms and conditions.

26.    The above-mentioned agreement between Goodyear and UNICCO was in full force and effect on August 28, 2006, at the time of the subject accident, and prior thereto.

27.    Pursuant to the August 30, 1995 agreement referred to above and assigned to UNICCO Service Company on September 11, 1996 (hereinafter referred to as "the tire maintenance agreement"), UNICCO agreed to, among other things, service and maintain Goodyear tires that were leased by GLI and used on GLI buses including the subject tires.

28.    GLI is an intended third-party beneficiary of the tire maintenance agreement and is referred to as "Operator" in the tire maintenance agreement.

29.    Pursuant to the tire maintenance agreement UNICCO was, among other things,

responsible for performing various services with respect to the subject tires.

30.     Pursuant to paragraph 12 of the tire maintenance agreement UNICCO was required to provide various services with respect to the subject tires, including but not limited to, mounting and maintaining recommended inflation pressure.

31.     Pursuant to paragraph 12 of the tire maintenance agreement UNICCO was required to ensure that the pressure of the subject tires was kept and maintained at the correct, proper and appropriate level.

32.     Prior to the subject accident the subject tires, which were on the subject bus at the time of the subject accident, were at garage locations where UNICCO employees were present and required to and/or did provide or perform various service(s) in connection with the subject tires.

33.     Pursuant to paragraph 13 of the tire maintenance agreement UNICCO was required to provide "responsible" and "capable" personnel to perform the work, labor and services UNICCO was required to perform pursuant to the tire maintenance agreement.

34.     Pursuant to paragraph 5 of the tire maintenance agreement, UNICCO agreed to "fully indemnify and hold harmless...Operator [Greyhound Lines, Inc.]...from any and all claims, demands, causes of action, damages, losses, and expenses of whatsoever nature...arising out of or related to the breach or failure to perform the contract services, the use by the Contractor [UNICCO] employees of service equipment supplied by Goodyear, or resulting from any negligent act, omission, misconduct, or fault of Contractor [UNICCO], their employees and/or agents.

35.     GLI has previously made demand upon UNICCO that it, among other things, indemnify GLI for all liability, losses, damages, judgments and expenses including attorneys' fees arising out of or relating to the subject accident and the above-captioned action.

383185.1

6

36.    UNICCO has failed to indemnify GLI.

37.    GLI has generally denied the plaintiff's allegations against it and its liability to the plaintiff, but notwithstanding such denials is exposed to damage by reason of a possible verdict or judgment. A copy of GLI's Answer to the Amended Complaint is annexed hereto as Exhibit "B".

38.    By reason of the exposure to damage, this impleader is made against the third-party defendant, MCI, by reason of, among other things, MCI's wrongful conduct, acts, omissions, negligence, carelessness, recklessness, breach of contract, breach of warranties and/or strict products liability in connection with, among other things, the design, construction, assembly, fabrication, manufacturer and/or sale of the subject bus.

39.    By reason of the exposure to damage, this impleader is made against the second third-party defendant, UNICCO, by reason of, among other things, UNICCO's wrongful conduct, acts, omissions, negligence, carelessness, recklessness, breach of contract, breach of the tire maintenance agreement, and/or UNICCO's failure to indemnify GLI.

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST THIRD-PARTY DEFENDANT, MCI

40.    Defendant/third-party plaintiff, GLI, repeats and re-alleges each and every allegation contained in paragraphs numbered "1" through "39" above.

41.    That although defendant/third-party plaintiff, GLI, has generally denied the allegations of wrongdoing asserted against it, nevertheless, should said defendant/third-party plaintiff be found to be liable to the plaintiff, then such liability shall derive from the active and affirmative wrongdoing of third-party defendant, MCI, while any wrongdoing of defendant/third-party plaintiff will have been passive and secondary only, by reason of which the defendant/third-party plaintiff, GLI, shall be entitled to complete indemnity, common law and/or

contractual, from the third-party defendant, MCI, including attorneys' fees and expenses.

42.     That, by reason thereof, defendant/third-party plaintiff, GLI, is entitled to full and complete indemnity from the third-party defendant in the above-captioned action.

## AS AND FOR A SECOND CAUSE OF ACTION
## AGAINST THIRD-PARTY DEFENDANT, MCI

43.     Defendant/third-party plaintiff, GLI, repeats and re-alleges each and every allegation contained in paragraphs numbered "1" through "39" above.

44.     That although defendant/third-party plaintiff, GLI, has generally denied the allegations of wrongdoing asserted against it, nevertheless, if defendant/third-party plaintiff is found to be liable to the plaintiff, and if complete indemnity is not granted in furtherance of the First Cause of Action hereinabove, then defendant/third-party plaintiff, GLI, is, nevertheless, entitled to contribution from third-party defendant, MCI, in proportion to the relative degrees of wrongdoing as between defendant/third-party plaintiff on the one part and the third-party defendant on the other part.

45.     That, by reason thereof, defendant/third-party plaintiff, GLI, is entitled to an allocation of any damages by reason of verdict or judgment in proportion to the degrees of wrongdoing.

## AS AND FOR A THIRD CAUSE OF ACTION
## AGAINST THIRD-PARTY DEFENDANT, MCI

46.     Defendant/third-party plaintiff, GLI, repeats and re-alleges each and every allegation contained in paragraphs numbered "1" through "39" above.

47.     Before the subject accident, the subject bus was leased by GLI from the Bank of Oklahoma, N.A. pursuant to a Master Lease Agreement dated February 16, 2000 (hereinafter referred to as "the Master Lease"). GLI begs leave to refer to the Master Lease at the time of trial.

383185.1

48.    The Master Lease was in effect at the time of the subject accident.

49.    After the subject accident, and pursuant to the terms of the Master Lease, GLI replaced the subject bus with another bus of the same type and manufacturer that was owned by GLI (hereinafter referred to as "the replacement bus").

50.    Pursuant to the terms of the Master Lease, GLI transferred title of the replacement bus to the Bank of Oklahoma, N.A.

51.    After and since the subject accident, and due to the subject accident, GLI has paid and will continue to pay no-fault benefits.

52.    As a result of all of the foregoing, GLI has been damaged and continues to be damaged, and has sustained loss including but not limited to property damage, economic loss, business interruption, loss of revenue and loss of income.

53.    Defendant/third-party plaintiff, GLI's damages and losses as described above are due to, among other things, MCI's wrongful conduct, acts, omissions, negligence, carelessness, recklessness, breach of contract, breach of warranties and/or strict products liability in connection with, among other things, the design, construction, assembly, fabrication, manufacturer and/or sale of the subject bus.

54.    The amount in controversy pertaining to the damages and loss suffered by GLI exceeds $75,000 exclusive of interest.

55.    Defendant/third-party plaintiff, GLI, has been damaged, and continues to be damaged, by MCI's conduct and is entitled to damages in an amount in excess of $75,000.  GLI is entitled to recover all of the damages and losses described above from MCI.  GLI is also entitled to interest since the date of the subject accident.

383185.1

## AS AND FOR A FOURTH CAUSE OF ACTION
## AGAINST THIRD-PARTY DEFENDANT, UNICCO
## (INDEMNITY)

56.     Defendant/third-party plaintiff, GLI, repeats and re-alleges each and every allegation contained in paragraphs numbered "1" through "39" above.

57.     That although defendant/third-party plaintiff, GLI, has generally denied the allegations of wrongdoing asserted against it, nevertheless, should said defendant/third-party plaintiff be found to be liable to the plaintiff, then such liability shall derive from the active and affirmative wrongdoing of third-party defendant, UNICCO, while any wrongdoing of defendant/third-party plaintiff will have been passive and secondary only, by reason of which the defendant/third-party plaintiff, GLI, shall be entitled to partial and/or complete indemnity, common law and/or contractual, including attorneys' fees and litigation expenses, from the third-party defendant, UNICCO.

58.     That, by reason thereof, defendant/third-party plaintiff, GLI, is entitled to partial and/or full and complete indemnity from the third-party defendant, UNICCO, in the above-captioned action, including attorneys' fees and litigation expenses.

## AS AND FOR A FIFTH CAUSE OF ACTION
## AGAINST THIRD-PARTY DEFENDANT, UNICCO
## (CONTRIBUTION)

59.     Defendant/third-party plaintiff, GLI, repeats and re-alleges each and every allegation contained in paragraphs numbered "1" through "39" above.

60.     That although defendant/third-party plaintiff, GLI, has generally denied the allegations of wrongdoing asserted against it, nevertheless, if defendant/third-party plaintiff is found to be liable to the plaintiff, and/or if partial and/or complete indemnity is not granted in furtherance of the Fourth Cause of Action hereinabove, then defendant/third-party plaintiff, GLI, is, nevertheless, entitled to contribution from third-party defendant, UNICCO, in proportion to

383185.1

the relative degrees of wrongdoing as between defendant/third-party plaintiff on the one part and the third-party defendant on the other part.

61.      That, by reason thereof, defendant/third-party plaintiff, GLI, is entitled to an allocation of any damages by reason of verdict or judgment in proportion to the degrees of wrongdoing.

## AS AND FOR A SIXTH CAUSE OF ACTION
## AGAINST THIRD-PARTY DEFENDANT, UNICCO

62.      Defendant/third-party plaintiff, GLI, repeats and re-alleges each and every allegation contained in paragraphs numbered "1" through "39" above.

63.      Before the subject accident, the subject bus was leased by GLI from the Bank of Oklahoma, N.A. pursuant to a Master Lease Agreement dated February 16, 2000 (hereinafter referred to as "the Master Lease"). GLI begs leave to refer to the Master Lease at the time of trial.

64.      The Master Lease was in effect at the time of the subject accident.

65.      After the subject accident, and pursuant to the terms of the Master Lease, GLI replaced the subject bus with another bus of the same type and manufacturer that was owned by GLI (hereinafter referred to as "the replacement bus").

66.      Pursuant to the terms of the Master Lease, GLI transferred title of the replacement bus to the Bank of Oklahoma, N.A.

67.      After and since the subject accident, and due to the subject accident, GLI has paid and will continue to pay no-fault benefits.

68.      As a result of all of the foregoing, GLI has been damaged and continues to be damaged, and has sustained loss including but not limited to property damage, economic loss, business interruption, loss of revenue and loss of income.

69.    Defendant/third-party plaintiff, GLI's damages and losses as described above are due to, among other things, UNICCO's wrongful conduct, acts, omissions, negligence, carelessness, recklessness, breach of contract and/or breach of the tire maintenance agreement.

70.    The amount in controversy pertaining to the damages and loss suffered by GLI exceeds $75,000 exclusive of interest.

71.    Defendant/third-party plaintiff, GLI, has been damaged, and continues to be damaged, by UNICCO's conduct and is entitled to damages in an amount in excess of $75,000. GLI is entitled to recover all of the damages and losses described above from UNICCO. GLI is also entitled to interest since the date of the subject accident.

**WHEREFORE**, the defendant/third-party plaintiff, GREYHOUND LINES INC., demands judgment against third-party defendants, MOTOR COACH INDUSTRIES, INC. and UGL UNICCO, Formerly Known As UNICCO Service Company, as follows:

1.    For indemnity on the First Cause of Action;

2.    For contribution on the Second Cause of Action;

3.    For damages in excess of the $75,000 jurisdictional limit of this Court on the Third Cause of Action, plus interest.

4.    For indemnity on the Fourth Cause of Action;

5.    For contribution on the Fifth Cause of Action;

6.    For damages in excess of the $75,000 jurisdictional limit of this Court on the Sixth Cause of Action, plus interest.

Together with costs, disbursements, fees and expenses, and such damages as are allowable under the law, inclusive of counsel fees.

Dated:      New York, New York
              April 28, 2008

                          Yours, etc.,

                          FABIANI COHEN & HALL, LLP

                          Kevin B. Pollak (KBP 6098)
                          Attorneys for Defendant/Third-Party Plaintiff
                          GREYHOUND LINES, INC.
                          570 Lexington Avenue, 4th Floor
                          New York, New York  10022
                          (212) 644-4420

TO:    MOTOR COACH INDUSTRIES, INC.
        1700 East Golf Road
        Schaumburg, Illinois  60173
        (866) 624-2622

        UGL UNICCO
        275 Grove Street
        Auburndale, MA  02466

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN  DISTRICT OF NEW YORK
------------------------------------------------------------------------x

LIONEL CADELIS,

                Plaintiff,

        -against-

GREYHOUND LINES, INC., and THE
GOODYEAR TIRE & RUBBER COMPANY,

                Defendants.

------------------------------------------------------------------------x

08 CV 2439 (PKL)

**AMENDED COMPLAINT**

Plaintiff Requests
A Jury Trial

APR 1 8 2008

U.S.D.C. S.D. N.Y.
CASHIERS

### PLAINTIFF'S AMENDED COMPLAINT

      Plaintiff LIONEL CADELIS (hereinafter "Plaintiff" or "Cadelis") by and through his

undersigned counsel, files his Amended Complaint for damages and allege as follows:

### Jurisdiction and Venue

      1.     Subject matter jurisdiction arises from the crash of a Greyhound bus and is proper

in this Court pursuant to 28 U.S.C. § 1332(a) because defendant Greyhound Lines, Inc. is a

foreign corporation organized and existing under the laws the State of Delaware and with its

principal place of business in the State of Texas, defendant Goodyear Tire and Rubber Company,

Inc. is a foreign corporation organized and existing under the laws of the State of Ohio and with

its principal place of business in the State of Ohio, and Plaintiff is a resident of a foreign country,

and brings this action on behalf of himself who is domiciled in Canada  and the matter in

controversy exceeds the sum of $75,000 excluding interest and costs.

      2.     The Court has *in personam* jurisdiction over the defendants because at all times

material to this cause of action they were and are foreign corporations for profit organized and

existing under the laws of a state other than New York but regularly and continually conducting

-1-

business in the State of New York and having sufficient contacts with the State of New York, both generally and with regard to this specific action, that the exercise of personal jurisdiction over them does not offend Due Process, the traditional notions of fair play or substantial justice and is proper.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391, as defendants conduct substantial business in this District and are subject to personal jurisdiction within this District.

### Plaintiff

4.      At all times relevant to this Complaint, Plaintiff was and is a citizen of and domiciled in Canada, and was a paying passenger on defendant Greyhound's bus, which crashed on I-87 near Elizabethtown, New York on August 28, 2006.

### Defendants

5.      Defendant Greyhound Lines, Inc. (hereinafter "Greyhound" or "defendant") is a corporation organized and existing under the laws of the State of Delaware and maintains its principal place of business in the State of Texas.  Greyhound conducts substantial business in the State of New York and within this District.

6.      Defendant The Goodyear Tire and Rubber Company (hereinafter "Goodyear" or "defendant") is a corporation organized and existing under the laws of the State of Ohio and maintains its principal place of business in the State of Ohio.  Goodyear conducts substantial business in the State of New York and within this District.

## General Allegations

7.    At all times mentioned herein, defendant Greyhound was and is in the business of owning, operating, managing, controlling, inspecting and maintaining, by and through its servants, agents and employees, commercial buses, and as such, it owned, operated, managed, controlled, inspected and maintained the bus upon which plaintiff Cadelis was riding at the time of the accident at issue in this case.

8.    At all times mentioned herein, defendant Goodyear was and is in the business of designing, developing, inspecting, marketing, selling and leasing tires for commercial buses and maintaining, by and through its servants, agents and employees, tires for commercial buses, and as such, it designed, developed, inspected, marketed, sold, leased and maintained the tires used on the bus upon which the passenger plaintiffs were riding at the time of the accident at issue in this case.

9.    At all times mentioned herein, Greyhound operated as a common carrier in that its buses were made available for transportation to the general fare-paying public.

10.    At all times mentioned herein, Ronald Burgess was an employee of Greyhound.

11.    At all times mentioned herein, Ronald Burgess operated a bus owned, managed, controlled, inspected and maintained by Greyhound with Greyhound's permission and consent and within the course and scope of his employment with Greyhound.

12.    On or about August 28, 2006, Greyhound owned, leased, maintained, managed, controlled and operated a 2001 MCI Greyhound Bus Number 4014, model DL-3 bearing Texas state registration number R7HW58 ("the subject bus").

13.    On or about August 28, 2006, the tires on the subject bus were designed, developed, marketed, owned by and leased to Greyhound by Goodyear ("the Goodyear tires").

14.    On or about August 28, 2006, Ronald Burgess operated the subject bus on its route between New York City and Montreal, Quebec and with the express and implied permission of Greyhound was responsible for the security of the subject bus and the safety of those in the subject bus.

15.    On or about August 28, 2006, Cadelis was a fare-paying passenger on the subject bus, having paid good and valuable consideration for their transportation.

16.    On or about August 28, 2006, the subject bus, driven by Ronald Burgess and on which Cadelis was riding, was traveling northbound on Interstate-87, a public roadway or thoroughfare, in or near Elizabethtown, New York.

17.    On or about August 28, 2006, Ronald Burgess operated the subject bus negligently by driving at an excessive speed and being inattentive to his driving responsibilities, the state of the bus equipment and the conditions of the roadways.

18.    On or about August 28, 2006, a tire designed, developed, marketed, distributed, manufactured and owned by Goodyear, leased to Greyhound and used on the subject bus failed to operate as intended.

19.    On or about August 28, 2006, Ronald Burgess lost control of the subject bus and it then left the roadway, slammed through a guardrail, rolled along the edge of a deep gully for several hundred feet, overturned repeatedly and crashed.

20.    As the subject bus rolled along the gully, several passengers, including Cadelis, were thrown from the bus at distances of greater than 75 feet or thrown about the bus.

-4-

21.    The aforesaid occurrence was caused without any fault or negligence on the part of the passengers contributing thereto.

22.    Prior to August 28, 2006, Greyhound was aware of the proclivity their model DL-3 buses had for tire failure, and that such tire failure could result in loss of control of the vehicles as well as consequent accidents.

23.    Prior to August 28, 2006, Goodyear was aware of the proclivity of the tires they designed, developed, manufactured, owned, marketed, distributed and leased to Greyhound had for failure, and Goodyear knew that such failure could result in loss of control of the vehicles as well as consequent accidents.

24.    Prior to August 28, 2006, Greyhound knowingly purchased, leased, employed, operated and used model DL-3 buses, including the subject bus, with frangible roofs, which would collapse upon impact.

25.    Prior to August 28, 2006, Greyhound knowingly purchased, leased, employed, operated and used model DL-3 buses, including the subject bus, that lacked passenger seatbelts.

26.    Prior to August 28, 2006, knowing that the absence of seatbelts would cause passengers to be ejected from such buses or otherwise injured in the event of an accident and rollover, Greyhound chose not to install seatbelts in their model DL-3 buses.

-5-

## FIRST CAUSE OF ACTION
### (NEGLIGENCE AGAINST GREYHOUND)

27.    Plaintiff hereby incorporates each and every allegation contained in

paragraphs 1 through 26 as if set forth more fully herein.

28.    As a common carrier, Greyhound had a duty to exercise the highest standard of

care and to provide safe transport to all passengers on the subject bus.

29.    Greyhound had knowledge that the tires on its model DL-3 buses had a history of

failure and resultant accidents and related injuries; that the frangible roofs on its model DL-3

buses were weak and frail and would collapse upon impact; and that the model DL-3 buses did

not have seatbelts installed for passenger use, which could cause passengers to be thrown and

possibly ejected and otherwise injured from the bus during an accident.

30.    Greyhound breached the duties of care it owed to the Plaintiff by negligently

operating, maintaining, managing, controlling, inspecting and leasing the subject bus; by

negligently hiring, supervising, training, communicating with and educating their employees,

representatives and agents who operated, controlled managed and maintained the subject bus,

including their failure to monitor any incidences of their employees operating their buses at

excessive speeds; and by recklessly ignoring the history of tire failure in the model DL-3 buses,

failing to take remedial measures with respect to the faulty tires, failing to take remedial

measures with respect to the frangible roofs on the model DL-3 buses and continuing to operate

said buses without seatbelts.

31.    A proximate cause of the crash was Greyhound's negligence; its reckless

disregard of the care required to be exercised by law and common practice for the safety of its

passengers; and other culpable conduct of defendant, through its agents, employees and

representatives, without any fault or negligence on the part of the Plaintiff contributing thereto.

32.    Ronald Burgess's excessive driving speed, failure to use appropriate care to

operate the subject bus, to observe the conditions of the roadway and to exercise the requisite

control over the bus violated state common law standards and state and federal statutory

standards, and was otherwise negligent.

33.    As Ronald Burgess's employer, Greyhound is vicariously liable for any of the

driver's negligence or misconduct.

34.    As a proximate result of defendant Greyhound's negligence and breach of its duty

of care, plaintiff Cadelis suffered serious injuries (as defined by section 5102 (d) of New York

State's Insurance Law), including but not limited to: dismemberment; significant disfigurement;

multiple fractures; permanent loss of use of a body organ, member, function or system; a

medically determined injury or impairment preventing each plaintiff from performing

substantially all of the material acts constituting each plaintiff's usual and customary daily

activities for not less than ninety days during the one hundred and eighty days immediately

following the occurrence of the injury or impairment; or permanent disfiguring scarring (all

foregoing injuries hereinafter referred to as "serious injuries"); conscious pain and suffering and

loss of the quality of enjoyment of life, has suffered economic loss greater than basic economic

loss as defined by section 5104 of New York State's Insurance Law, have incurred medical

expenses and will continue to incur such expenses in the future, has lost earnings and in the

future will continue to lose earnings, has sustained psychiatric and emotional distress, and all

other damages allowable under the applicable law.

-7-

WHEREFORE, Cadelis prays that judgment be entered in his or her favor and against defendants Greyhound and Goodyear in a sum in excess of seventy five thousand dollars ($75,000.00), exclusive of pre-judgment interest and the costs of this action, such amounts to be proven at trial.

## SECOND CAUSE OF ACTION
### (NEGLIGENCE AGAINST GOODYEAR)

35.    Plaintiff hereby incorporates each and every allegation contained in paragraphs 1 through 34 as if set forth more fully herein

36.    Goodyear had a contractual relationship to provide tires to Greyhound for use on Greyhound buses.

37.    Goodyear had a duty to exercise reasonable care and to provide a safe product to all passengers on buses using its subject tire.

38.    Goodyear was negligent in the design, manufacture, assembly, testing, labeling, instruction and/or inspection and warnings of and related to the tire, its component parts and/or equipment, and further sold, supplied, distributed, promoted and/or placed into the market and/or stream of commerce, defective and dangerous products without proper testing, inspection or warning thereof.

39.    In failing to exercise reasonable care, Goodyear launched a force or instrument of harm into the stream of commerce, upon which Plaintiff detrimentally relied.

40.    On August 28, 2006, the subject tire was being used for its intended purpose.

41.    The subject tire was unfit for its intended purpose.

42.    Goodyear breached the duties of care it owed to the plaintiff Cadelis by negligently designing, developing, manufacturing, maintaining, managing, controlling and

leasing the subject tire; by negligently hiring, supervising, training, communicating with and educating its employees, representatives and agents who designed, developed, manufactured, managed, controlled, maintained and leased the subject tire; and by recklessly ignoring the history their tires had of failures and continuing to lease said tires.

43.    As a proximate result of defendant Goodyear's negligence and breach of its duty of care plaintiff Cadelis suffered serious injuries (as defined by section 5102 (d) of New York State's Insurance Law and as described above), conscious pain and suffering and a loss of the quality of enjoyment of life, has suffered economic loss greater than basic economic loss as defined by section 5104 of New York State's Insurance Law, have incurred medical expenses and will continue to incur such expenses in the future, has lost earnings and in the future will continue to lose earnings, has sustained psychiatric and emotional distress, and all other damages allowable under the applicable law.

WHEREFORE, Cadelis prays that judgment be entered in his or her favor and against defendants Greyhound and Goodyear in a sum in excess of seventy five thousand dollars ($75,000.00), exclusive of pre-judgment interest and the costs of this action, such amounts to be proven at trial.

### THIRD CAUSE OF ACTION
### (STRICT PRODUCT LIABILITY)

44.    Plaintiff hereby incorporates each and every allegation contained in paragraphs 1 through 43 as if set forth more fully herein.

45.    The subject tire was defectively and improperly designed, manufactured, assembled and/or labeled by Goodyear.

46.    The subject tire was sold, distributed and marketed in a defective and/or unreasonably dangerous condition and/or was unfit for its intended use into the stream of commerce by Goodyear.

47.    Goodyear failed to warn of the propensities of its tire to fail under conditions similar to those encountered at the date and time of the accident.

48.    At the time that the subject tire left Goodyear's control it was defective, unreasonably dangerous and/or unfit for its intended use.

49.    The subject tire had not been altered, modified or changed in any form or fashion prior to its use on August 28, 2006.

50.    As a direct and proximate result of the defective, unreasonably dangerous and/or unfit condition of the subject tire, plaintiff Cadelis suffered serious injuries (as defined by section 5102 (d) of New York State's Insurance Law and as described above), conscious pain and suffering and a loss of the quality of enjoyment of life, has suffered economic loss greater than basic economic loss as defined by section 5104 of New York State's Insurance Law, have incurred medical expenses and will continue to incur such expenses in the future, has lost earnings and in the future will continue to lose earnings, has sustained psychiatric and emotional distress, and all other damages allowable under the applicable law.

WHEREFORE, Cadelis prays that judgment be entered in his or her favor and against defendant Goodyear in a sum in excess of seventy five thousand dollars ($75,000.00), exclusive of pre-judgment interest and the costs of this action, such amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### (BREACH OF WARRANTIES)

51.     Plaintiff hereby incorporates each and every allegation contained in paragraphs 1 through 50 as if set forth more fully herein.

52.     Greyhound expressly and impliedly warranted that it would provide safe, reliable and appropriate common carriage bus transportation for its fare-paying passengers, using bus operation techniques that would assure the reasonable and safe transport of all passengers, including the Plaintiff, and that its drivers, buses and equipment were reasonably fit for their intended and foreseeable uses and purposes.

53.     Greyhound breached its express and implied warranties by failing to provide safe, reliable and appropriate common carriage bus transportation for its fare-paying passengers when the subject bus crashed during the trip from New York City to Montreal.

54.     Goodyear expressly and impliedly warranted that it would provide design, develop, manufacture, maintain, own and lease safe, reliable and appropriate tires, using techniques that would assure the safety of any users of its product, including the passenger plaintiffs, and that its tires and equipment were reasonably fit for their intended and foreseeable uses and purposes.

55.     Goodyear breached its express and implied warranties by failing to provide safe, reliable and appropriate tires for passengers on the subject bus when the subject tire failed, causing the bus to veer off the road and contributing to the crash during the trip from New York City to Montreal.

56.     As a proximate result of defendants' breach of their express and implied warranties, plaintiff Cadelis suffered serious injuries (as defined by section 5102 (d) of New

-11-

York State's Insurance Law and as described above), conscious pain and suffering and a loss of the quality of enjoyment of life, has suffered economic loss greater than basic economic loss as defined by section 5104 of New York State's Insurance Law, have incurred medical expenses and will continue to incur such expenses in the future, has lost earnings and in the future will continue to lose earnings, has sustained psychiatric and emotional distress, and all other damages allowable under the applicable law.

WHEREFORE, Cadelis prays that judgment be entered in his or her favor and against defendants in a sum in excess of seventy five thousand dollars ($75,000.00), exclusive of pre-judgment interest and the costs of this action, such amounts to be proven at trial.

## FIFTH CAUSE OF ACTION
### (PUNITIVE DAMAGES)

57.     Plaintiff hereby incorporates each and every allegation contained in paragraphs 1 through 56 as if set forth more fully herein.

58.     Prior to the August 28, 2006 accident, Greyhound knew of the proclivity the model DL-3 buses, of which the bus involved in the subject accident was one, had with tires that failed, resulting in possible loss of control of the bus and accidents resulting therefrom.

59.     Prior to the August 28, 2006 accident, Greyhound knew that safer tires than those that they were using on the model DL-3 buses, of which the bus involved in the subject accident was one, were available and had the opportunity to replace or repair those tires, but chose not to spend the extra money to purchase those safer tires or make the pre-existing tires safer for its buses. Instead, it continued to lease from Goodyear tires that had a propensity to fail and use those tires without any attempt to make those tires safer.

60.    Prior to the August 28, 2006 accident, Greyhound knowingly purchased, leased, employed, operated and used model DL-3 buses roofs, of which the bus involved in the subject accident was one, that had frail and weak frangible which would collapse upon impact.

61.    Prior to the August 28, 2006 accident, Greyhound knowingly purchased, leased, employed, operated and used model DL-3 buses, of which the bus involved in the subject accident was one, that did not have seatbelts installed for passenger use.

62.    As a direct and proximate cause of the reckless, wanton and willful misconduct of Greyhound, including its employees, and its gross disregard for the safety of its passengers, including, but not limited to, its knowing disregard of the propensity of the tires on the model DL-3 buses to fail; the use of frangible roofs on the model DL-3 buses; the absence of passenger seatbelts on the model DL-3 buses; the lack of training defendants provided to its drivers; Greyhound's grossly deficient vehicle inspection and maintenance; and the grossly deficient vehicle operation, including the gross negligence of Greyhound's driver in driving at an excessive rate of speed, during the trip from New York City to Montreal on August 28, 2006 plaintiff Cadelis suffered serious injuries (as defined by section 5102 (d) of New York State's Insurance Law and as described above), conscious pain and suffering and a loss of the quality of enjoyment of life, has suffered economic loss greater than basic economic loss as defined by section 5104 of New York State's Insurance Law, have incurred medical expenses suffering, and will continue to incur such expenses in the future, has lost earnings and in the future will continue to lose earnings, has sustained psychiatric and emotional distress, and all other damages allowable under the applicable law.

-13-

63.    As a direct and proximate cause of the reckless, wanton and willful misconduct of Goodyear, including its employees, and its gross disregard for the safety of the users of plaintiff Cadelis suffered serious injuries (as defined by section 5102 (d) of New York State's Insurance Law and as described above), conscious pain and suffering and a loss of the quality of enjoyment of life, has suffered economic loss greater than basic economic loss as defined by section 5104 of New York State's Insurance Law, have incurred medical expenses suffering, and will continue to incur such expenses in the future, has lost earnings and in the future will continue to lose earnings, has sustained psychiatric and emotional distress, and all other damages allowable under the applicable law.

WHEREFORE, Cadelis prays that judgment be entered in his or her favor and against defendants in a sum in excess of seventy five thousand dollars ($75,000.00), exclusive of pre-judgment interest and the costs of this action, such amounts to be commensurate with the proof in this case and to be proven at trial.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: Nassau, New York
       April 15, 2008

Michael B. Zaransky (MZ2300)
CHAPMAN ZARANSKY LLP, OF COUNSEL TO
LAW OFFICES OF JAY H. TANENBAUM
Attorney for Plaintiff LIONEL CADELIS
110 Wall Street, 16th Floor
New York, New York 10005
(212) 422-1765
Our File No. 06J-0081

-14-

Kevin B. Pollak, Esq.
FABIANI COHEN & HALL, LLP
Attorney for Defendant
GREYHOUND LINES, INC.
570 Lexington Avenue
New York, New York 10022

THE GOODYEAR TIRE & RUBBER CO
C/O Corporation Service Co.
80 State Street
Albany, Nyew York 12207-2543

Alan Kaplan, Esq.
Herrick, Feinstein, LLP
2 Park Avenue
New York, New York 10016

CHAPMAN ZARANSKY LLP

| | |
|---|---|
| Index No.  08 CV 2439 (PKL) | Year 20 |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LIONEL CADELIS,

Plaintiff,

-against-

GREYHOUND LINES, INC., and THE GOODYEAR
TIRE & RUBBER COMPANY,

Defendants

---

AMENDED COMPLAINT

---

CHAPMAN ZARANSKY LLP

Attomey(s) for  Plaintiff, Lionel Cadelis
Office and Post Office Address, Telephone

114 OLD COUNTRY ROAD
SUITE 680
MINEOLA, NEW YORK 11501
(516) 741-6601

To

Attorney(s) for

Service of a copy of the within                          is hereby admitted.

Dated,

Attorney(s) for                          ...................................

Sir: Please take notice
☐ NOTICE OF ENTRY
that the within is a (certified) true copy of a
duly entered in the office of the clerk of the within named court on                          20
☐ NOTICE OF SETTLEMENT
that an order                          of which the within is a true copy will be presented for
settlement to the HON.                          one of the judges
of the within named Court, at
on the                          day of                          20    at    M.

Dated,

COMPLIANCE PURSUANT TO 22 NYCRR §130-1.1-a

To the best of the undersigned's knowledge, information and belief formed
after an inquiry reasonable under the circumstances, the within document(s)
and contentions contained herein are not frivolous as defined in 22 NYCRR
§130-1.1-a.

Yours, etc.
CHAPMAN ZARANSKY LLP
Attorney(s)  for

Office and Post Office Address

114 OLD COUNTRY ROAD
SUITE 680
MINEOLA, NEW YORK 11501
(516) 741-6601

To

Attorney(s) for

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

LIONEL CADELIS,

Plaintiff,

v.

GREYHOUND LINES, INC., and THE GOODYEAR
TIRE & RUBBER COMPANY,

Defendants.
-------------------------------------------------------------------X

ANSWER TO
AMENDED COMPLAINT
AND CROSSCLAIMS

08 CIV 2439 (PKL)

[Related to
06 CIV 13371 (PKL)]

JURY TRIAL
DEMANDED

Defendant, GREYHOUND LINES, INC., by its attorneys, FABIANI COHEN & HALL,

LLP, as and for an Answer to the plaintiff's Amended Complaint, sets forth, upon information

and belief, the following:

### Jurisdiction and Venue

FIRST:  Denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph No. "1" of the plaintiff's Amended Complaint, except admits

that defendant Greyhound Lines, Inc. is a foreign corporation organized and existing under the

laws of the State of Delaware, with its principal place of business in the State of Texas, and

respectfully refers all questions of law to the determination of the Trial Court.

SECOND:  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations contained in Paragraph No. "2" of the plaintiff's Amended Complaint, except

admits that defendant Greyhound Lines, Inc. is a foreign corporation organized and existing

under the laws of a state other than New York and conducts business in the State of New York,

and respectfully refers all questions of law to the determination of the Trial Court.

THIRD:  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations contained in Paragraph No. "3" of the plaintiff's Amended Complaint, except

admits that defendant Greyhound Lines, Inc. conducts business in this District and respectfully refers all questions of law to the determination of the Trial Court.

### Plaintiff

FOURTH:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "4" of the plaintiff's Amended Complaint, except admits that the plaintiff, LIONEL CADELIS, was a paying passenger on the subject bus on August 28, 2006.

### Defendants

FIFTH:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "5" of the plaintiff's Amended Complaint, except admits that defendant Greyhound Lines, Inc. is a corporation organized and existing under the laws of the State of Delaware, maintains its principal place of business in the State of Texas and conducts business in the State of New York and within this District.

SIXTH:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "6" of the plaintiff's Amended Complaint.

### General Allegations

SEVENTH:  Denies the allegations contained in Paragraph No. "7" of the plaintiff's Amended Complaint, except admits that defendant Greyhound Lines, Inc. was and is in the business of utilizing buses to transport passengers, including the bus upon which the plaintiff, Cadelis (hereinafter the "passenger plaintiff"), was riding at the time of the accident at issue in this case.

EIGHTH:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "8" of the plaintiff's Amended Complaint.

NINTH:  Denies knowledge or information sufficient to form a belief as to the truth of

the allegations contained in Paragraph No. "9" of the plaintiff's Amended Complaint except admits that Greyhound Lines, Inc. was and is in the business of utilizing buses to transport passengers, and respectfully refers all questions of law to the determination of the Trial Court.

TENTH:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "10" of the plaintiff's Amended Complaint, except admits that on August 28, 2006, and at the time of the accident at issue in this litigation, Ronald Burgess was an employee of Greyhound.

ELEVENTH:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "11" of the plaintiff's Amended Complaint, except admits that on August 28, 2006, and at the time of the accident at issue in this litigation, Ronald Burgess operated an MCI model 102DL3 bus bearing Texas registration number R7HW58 with the permission and consent of Greyhound Lines, Inc. and within the course and scope of his employment with Greyhound Lines, Inc.

TWELVTH:  Denies the allegations contained in Paragraph No. "12" of the plaintiff's Amended Complaint, except admits that on or before August 28, 2006, Greyhound Lines, Inc. leased a 2000 MCI model 102DL3 bus bearing Texas state registration number R7HW58 (the "subject bus").

THIRTEENTH:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "13" of the plaintiff's Amended Complaint, except admits that on August 28, 2006, the tires on the subject bus were leased to Greyhound Lines, Inc. by The Goodyear Tire & Rubber Company, who upon information and belief designed, developed, marketed and owned the tires on the subject bus.

FOURTEENTH:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "14" of the plaintiff's Amended Complaint,

383157.1

3

except admits that on August 28, 2006, and at the time of the accident at issue in this litigation, Ronald Burgess operated an MCI model 102DL3 bus bearing Texas registration number R7HW58 with the permission and consent of Greyhound Lines, Inc. and within the course and scope of his employment with Greyhound Lines, Inc.

FIFTEENTH: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "15" of the plaintiff's Amended Complaint, except admits that on August 28, 2006, the passenger plaintiff was a fare-paying passenger on the subject bus.

SIXTEENTH: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "16" of the plaintiff's Amended Complaint, except admits that on August 28, 2006, the subject bus, driven by Ronald Burgess and on which the passenger plaintiff was riding, was traveling northbound on Interstate 87, a public roadway or thoroughfare, in or near Elizabethtown, New York.

SEVENTEENTH: Denies each and every allegation contained in Paragraph No. "17" of the plaintiff's Amended Complaint.

EIGHTEENTH: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "18" of the plaintiff's Amended Complaint.

NINETEENTH: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "19" of the plaintiff's Amended Complaint except admits that the subject bus left the roadway.

TWENTIETH: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "20" of the plaintiff's Amended Complaint.

TWENTY-FIRST: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "21" of the plaintiff's Amended Complaint.

TWENTY-SECOND:  Denies each and every allegation contained in Paragraph No. "22" of the plaintiff's Amended Complaint.

TWENTY-THIRD:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "23" of the plaintiff's Amended Complaint.

TWENTY-FOURTH:  Denies each and every allegation contained in Paragraph No. "24" of the plaintiff's Amended Complaint.

TWENTY-FIFTH:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "25" of the plaintiff's Amended Complaint, except admits that prior to August 28, 2006, Greyhound Lines, Inc. utilized MCI model 102DL3 buses which did not come equipped with passenger seatbelts, including the subject bus, to transport passengers.

TWENTY-SIXTH:  Denies each and every allegation contained in Paragraph No. "26" of the plaintiff's Amended Complaint.

## ANSWERING THE FIRST CAUSE OF ACTION
## (NEGLIGENCE AGAINST GREYHOUND)

TWENTY-SEVENTH:  In response to Paragraph No. "27" of the plaintiff's Amended Complaint, defendant, Greyhound Lines, Inc., repeats, reiterates and realleges each and every assertion and denial contained in Paragraph Nos. "FIRST" through "TWENTY-SIXTH" hereinabove as though more fully set forth at length herein.

TWENTY-EIGHTH:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "28" of the plaintiff's Amended Complaint and respectfully refers all questions of law to the determination of the Trial Court.

TWENTY-NINTH:  Denies each and every allegation contained in Paragraph No. "29" of the plaintiff's Amended Complaint.

THIRTIETH:  Denies each and every allegation contained in Paragraph No. "30" of the plaintiff's Amended Complaint.

THIRTY-FIRST:  Denies each and every allegation contained in Paragraph No. "31" of the plaintiff's Amended Complaint.

THIRTY-SECOND:  Denies each and every allegation contained in Paragraph No. "32" of the plaintiff's Amended Complaint.

THIRTY-THIRD:  Denies each and every allegation contained in Paragraph No. "33" of the plaintiff's Amended Complaint and respectfully refers all questions of law to the determination of the Trial Court.

THIRTY-FOURTH:  Denies each and every allegation contained in Paragraph No. "34" of the plaintiff's Amended Complaint.

## ANSWERING THE SECOND CAUSE OF ACTION
## (NEGLIGENCE AGAINST GOODYEAR)

THIRTY-FIFTH:   In response to Paragraph No. "35" of the plaintiff's Amended Complaint, defendant, Greyhound Lines, Inc., repeats, reiterates and realleges each and every assertion and denial contained in Paragraph Nos. "FIRST" through "THIRTY-FOURTH" hereinabove as though more fully set forth at length herein.

THIRTY-SIXTH:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "36" of the plaintiff's Amended Complaint.

THIRTY-SEVENTH:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "37" of the plaintiff's Amended Complaint.

THIRTY-EIGHTH:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "38" of the plaintiff's Amended

Complaint.

THIRTY-NINTH:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "39" of the plaintiff's Amended Complaint.

FORTIETH:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "40" of the plaintiff's Amended Complaint.

FORTY-FIRST:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "41" of the plaintiff's Amended Complaint.

FORTY-SECOND:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "42" of the plaintiff's Amended Complaint.

FORTY-THIRD:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "43" of the plaintiff's Amended Complaint.

## ANSWERING THE THIRD CAUSE OF ACTION
### (STRICT PRODUCT LIABILITY)

FORTY-FOURTH:  In response to Paragraph No. "44" of the plaintiff's Amended Complaint, defendant, Greyhound Lines, Inc., repeats, reiterates and realleges each and every assertion and denial contained in Paragraph Nos. "FIRST" through "FORTY-THIRD" hereinabove as though more fully set forth at length herein.

FORTY-FIFTH:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "45" of the plaintiff's Amended Complaint.

FORTY-SIXTH:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "46" of the plaintiff's Amended Complaint.

FORTY-SEVENTH:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "47" of the plaintiff's Amended Complaint.

FORTY-EIGHTH: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "48" of the plaintiff's Amended Complaint.

FORTY-NINTH: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "49" of the plaintiff's Amended Complaint.

FIFTIETH: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "50" of the plaintiff's Amended Complaint.

**ANSWERING THE FOURTH CAUSE OF ACTION
(BREACH OF WARRANTIES)**

FIFTY-FIRST: In response to Paragraph No. "51" of the plaintiff's Amended Complaint, defendant, Greyhound Lines, Inc., repeats, reiterates and realleges each and every assertion and denial contained in Paragraph Nos. "FIRST" through "FIFTIETH" hereinabove as though more fully set forth at length herein.

FIFTY-SECOND: Denies each and every allegation contained in Paragraph No. "52" of the plaintiff's Amended Complaint and respectfully refers all questions of law to the determination of the Trial Court.

FIFTY-THIRD: Denies each and every allegation contained in Paragraph No. "53" of the plaintiff's Amended Complaint.

FIFTY-FOURTH: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "54" of the plaintiff's Amended Complaint.

FIFTY-FIFTH: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "55" of the plaintiff's Amended Complaint.

FIFTY-SIXTH: Denies each and every allegation contained in Paragraph No. "56" of the plaintiff's Amended Complaint.

## ANSWERING THE FIFTH CAUSE OF ACTION
## (PUNITIVE DAMAGES)

FIFTY-SEVENTH:  In response to Paragraph No. "57" of the plaintiff's Amended Complaint, defendant, Greyhound Lines, Inc., repeats, reiterates and realleges each and every assertion and denial contained in Paragraph Nos. "FIRST" through "FIFTY-SIXTH" hereinabove as though more fully set forth at length herein.

FIFTY-EIGHTH:  Denies each and every allegation contained in Paragraph No. "58" of the plaintiff's Amended Complaint

FIFTY-NINTH:  Denies each and every allegation contained in Paragraph No. "59" of the plaintiff's Amended Complaint

SIXTIETH:  Denies each and every allegation contained in Paragraph No. "60" of the plaintiff's Amended Complaint

SIXTY-FIRST:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "61" of the plaintiff's Amended Complaint, except admits that prior to August 28, 2006, Greyhound Lines, Inc. utilized MCI model 102DL3 buses which did not come equipped with passenger seatbelts, including the subject bus, to transport passengers.

SIXTY-SECOND:  Denies each and every allegation contained in Paragraph No. "62" of the plaintiff's Amended Complaint

SIXTY-THIRD:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. "63" of the plaintiff's Amended Complaint.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

SIXTY-FOURTH:  Upon information and belief, any damages sustained by the plaintiff herein was not caused by any negligence or carelessness on the part of Greyhound Lines, Inc., its

servants, agents or employees, but were caused solely by the negligence and carelessness of the plaintiff and that such conduct requires diminution of any award, verdict or judgment that plaintiff may recover against Greyhound Lines, Inc.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

SIXTY-FIFTH: Notwithstanding that Greyhound Lines, Inc. has denied liability herein, in the event that liability is found, the liability of Greyhound Lines, Inc. shall be fifty percent or less of the total liability assigned to all persons liable and pursuant to New York Civil Practice Law and Rules ("CPLR") §1601 et seq., or any similar applicable law, the liability of Greyhound Lines, Inc. for non-economic loss shall not exceed its equitable share determined in accordance with the relative culpability of each person causing or contributing to the total liability of non-economic loss.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

SIXTY-SIXTH: That to the extent the plaintiff recovers any damages for the cost of medical care, dental care, custodial care or rehabilitation services, loss of earnings and/or other economic loss, the amount of the award shall be reduced by the sum total of all collateral reimbursements, from whatever source, whether it be insurance, social security payments, Workers' Compensation, employee benefits or other such programs, in accordance with the provisions of the CPLR §4545 or any similar applicable law.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

SIXTY-SEVENTH: Upon information and belief, the injuries sustained by plaintiff are such that they do not fall within the requirements of Insurance Law §51-02, et seq. or any similar no-fault threshold law.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

SIXTY-EIGHTH: The Fourth Cause of Action fails to state a claim upon which relief can be granted as against defendant Greyhound Lines, Inc.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

SIXTY-NINTH: The Fifth Cause of Action fails to state a claim upon which relief can be granted as against defendant Greyhound Lines, Inc.

## AS AND FOR AN SEVENTH AFFIRMATIVE DEFENSE

SEVENTIETH: Some of the claims and or theories of liability made by the plaintiff in this action, including but not necessarily limited to those pertaining to seatbelts and the roof the subject bus, are preempted and prohibited. To the extent the Causes of Action in this action are based upon these preempted theories of liability, or any other pre-empted theory of liability, said Cause of Actions fail to state a claim for which relief can be granted.

## AS AND FOR A EIGHTH AFFIRMATIVE DEFENSE

SEVENTY-FIRST: The law of one or more jurisdictions, states and/or other countries, besides the State of New York, may be applicable to all or portions of the claims or defenses made by some or all of the parties in this litigation, including but not necessarily limited to the law of the state of citizenship, residence or domicile of the plaintiff.

## AS AND FOR A FIRST CROSS-CLAIM
## AGAINST CO-DEFENDANT
## THE GOODYEAR TIRE & RUBBER COMPANY ("GOODYEAR")

(COMMON LAW INDEMNIFICATION)

SEVENTY-SECOND: Defendant, Greyhound Lines, Inc., repeats and realleges each and every allegation set forth above in paragraphs "FIRST" through "SEVENTY-FIRST" as though fully set forth at length herein.

SEVENTY-THIRD: Before August 28, 2006 Greyhound Lines, Inc. and The Goodyear

Tire & Rubber Company (hereinafter referred to as "GOODYEAR"), entered into an Agreement dated October 3, 2000 (hereinafter referred to as "the Agreement"). Greyhound Lines, Inc. begs leave to refer to the Agreement for its complete terms and conditions.

SEVENTY-FOURTH:    Paragraph 2 of the Agreement, entitled "Lease of Tires," provides in part that "Goodyear will furnish Greyhound tires for use on the entire fleet of buses operated by Greyhound..." and that "Goodyear commits to produce a new tire that will meet Greyhound's fleet requirements..."

SEVENTY-FIFTH:    Paragraph 6 of the Agreement, entitled "Title to Tires and Liens on Buses", provides in part that "[t]itle to all tires furnished hereunder shall remain at all times in Goodyear..."

SEVENTY-SIXTH:    Paragraph 11 of the Agreement, entitled "Service", provides in part: "(a) Goodyear warrants and promises that all tires provided to Greyhound will be of sufficient grade, quality, and standard to permit reasonable and safe use and operation on Greyhound's buses."

SEVENTY-SEVENTH:    Paragraph 11 (c) of the Agreement provides in part that "tire service to be performed by Goodyear will be performed in accordance with Exhibit "C" attached" to the Agreement.

SEVENTY-EIGHTH:    The Agreement contains various Exhibits, including Exhibit "C". Exhibit "C" is entitled Procedure Guideline No.:  PB K-91 (hereinafter referred to as "the K-91").  (The Agreement, including all Exhibits of the Agreement, are hereinafter collectively referred to as "the Agreement".)

SEVENTY-NINTH:    Paragraph 12 of the Agreement, entitled "Training", provides in part that "Goodyear agrees to provide training, to include but not limited to the proper safety, reliability, and maintenance procedures for the tires".

383157.1

12

EIGHTIETH:  Paragraph 9 of the Agreement, entitled "Contingencies and Indemnity", provides in part that: "Goodyear agrees to defends, save and hold Greyhound harmless from claims and actions resulting from the use or possession of the tires furnished hereunder caused by the sole negligence of Goodyear"; and "Goodyear will indemnify, save harmless, and defend Greyhound…from and against liability, losses, claims, demands, suits, and judgments, and from costs and expenses, including the reasonable fees of counsel therewith, arising or as a result of the negligence of Goodyear or its agents or employees".

EIGHTY-FIRST:  On August 28, 2006 a bus ("the subject bus") carrying passengers, including the passenger plaintiff identified in the plaintiff's Amended Compliant, and driven by Ronald Burgess, an employee of Greyhound Lines, Inc., was traveling on I-87 in New York when it left the roadway of I-87 and was involved in an accident ("the subject accident").

EIGHTY-SECOND:  At the time of the subject accident the subject bus was equipped model G409 Goodyear tires (hereinafter referred to as "G409 tires"), including the left front steer tire on the subject bus (hereinafter "the left front tire").

EIGHTY-THIRD:  At the time of the subject accident, and at all times prior thereto, GOODYEAR owned the G409 tires including the left front tire.

EIGHTY-FOURTH:  Greyhound Lines, Inc. leased the G409 tires, including the left front tire, from GOODYEAR.

EIGHTY-FIFTH:  GOODYEAR designed the G409 tires, including the left front tire.

EIGHTY-SIXTH:  GOODYEAR constructed, assembled, fabricated and manufactured the G409 tires, including the left front tire.

EIGHTY-SEVENTH:  In the plaintiff's Amended Complaint the plaintiff alleges, among other things, that: "Goodyear…designed, developed, inspected, marketed, sold, leased and maintained the tires used on the bus upon which the passenger plaintiff was riding at the time of

383157.1

13

the accident at issue in this case" (paragraph 8); on or about August 28, 2006 a tire designed, developed, marketed, distributed, manufactured, and owned by Goodyear, leased to Greyhound and used on the subject bus failed to operate as intended" (paragraph 18); "Goodyear was negligent in the design, manufacture, assembly, testing, labeling, instruction and/or inspection and warnings of and related to the tire, its component parts and/or equipment, and further sold, supplied, distributed, promoted and/or placed into the market and/or stream of commerce, defective and dangerous products without proper testing, inspection or warning thereof" (paragraph 38); "on August 28, 2006, the subject tire was being used for its intended purpose" (paragraph 40); "the subject tire was unfit for its intended purpose" (Paragraph 41); "Goodyear breach the duties of care it owed…by negligently designing, developing, manufacturing, maintaining, managing, controlling and leasing the subject tire" (paragraph 42); "the subject tire was defectively and improperly designed, manufactured, assembled and/or labeled by Goodyear" (paragraph 45); "the subject tire was sold, distributed and marketed in a defective and unreasonably dangerous condition and/or was unfit for its intended use" (paragraph 46); "Goodyear failed to warn of the propensities of its tire to fail under conditions similar to those encountered at the date and time of the accident" (paragraph 47); "at the time that the subject tire left Goodyear's control it was defective and unreasonably dangerous and/or unfit for its intended use" (paragraph 48) and "Goodyear breached its express and implied warranties by failing to provide safe, reliable and appropriate tires for passengers on the subject bus" (paragraph 55).

EIGHTY-EIGHTH:    Although Greyhound Lines, Inc. has denied the plaintiff's allegations regarding its liability and damages claims, Greyhound Lines, Inc. is nevertheless exposed to damage by reason of a possible verdict or judgment.

EIGHTY-NINTH: By reason of exposure to damage this cross-claim is made against GOODYEAR by reason of, among other things, GOODYEAR's:   wrongful conduct; acts;

383157.1

14

omissions; negligence, carelessness and/or recklessness (including but not limited to negligence, carelessness and/or recklessness in the design, construction, assembly, fabrication, manufacture, service, maintenance and/or repair of the G409 tires including the left front tire); breach of the Agreement; breach of contract; breach of warranties (including but not limited to those in the Agreement and/or those created by operation of law); and/or strict products liability.

NINTIETH:    That although Greyhound Lines, Inc. has denied the allegations of wrongdoing asserted against it by the plaintiff, nevertheless, should said defendant be found liable to the plaintiff, such liability will have been the result of the active and affirmative wrongdoing of co-defendant, GOODYEAR, while the wrongdoing of Greyhound Lines, Inc. will have been passive and secondary.

NINTY-FIRST: By reason of all of the foregoing, Greyhound Lines, Inc. is entitled to full indemnity from co-defendant, GOODYEAR.

### AS AND FOR A SECOND CROSS-CLAIM
### AGAINST CO-DEFENDANT
### THE GOODYEAR TIRE & RUBBER COMPANY ("GOODYEAR")

(CONTRIBUTION)

NINTY-SECOND:  Defendant, Greyhound Lines, Inc. repeats and realleges each and every allegation set forth above in paragraphs "FIRST" through "NINTY-FIRST" as though fully set forth at length herein.

NINTY-THIRD:   That although Greyhound Lines, Inc. has denied the allegations of wrongdoing asserted against it by the plaintiff, nevertheless, should said defendant be found liable to the plaintiff and should said defendant not be awarded full indemnity on the first cross-claim of this Answer to the Amended Complaint, then Greyhound Lines, Inc. is entitled to an apportionment of fault against co-defendant, GOODYEAR, in proportion to the relative degrees of fault or wrongdoing among the parties to this action or as otherwise provided under Articles

383157.1

14 and 16 of the CPLR or any other similar applicable law.

NINETY-FOURTH:  By reason of the foregoing, Greyhound Lines, Inc. is entitled to contribution and/or partial indemnity from the co-defendant, GOODYEAR, in accordance with the relative degrees of fault or wrongdoing of the parties to this action or as otherwise provided under Articles 14 and 16 of the CPLR or any similar applicable law.

**AS AND FOR A THIRD CROSS-CLAIM**
**AGAINST CO-DEFENDANT**
**THE GOODYEAR TIRE & RUBBER COMPANY ("GOODYEAR")**

(CONTRACTUAL INDEMNIFICATION)

NINTY-FIFTH:  Defendant, Greyhound Lines, Inc., repeats and realleges each and every allegation above set forth in paragraphs "FIRST" through "NINETY-FOURTH" as though fully set forth at length herein.

NINETY-SIXTH:  That pursuant to the Agreement made by and between Greyhound Lines, Inc., on the one part, and co-defendant, GOODYEAR, on the other part, co-defendant, GOODYEAR undertook to indemnify, fully or partially, Greyhound Lines, Inc. for loss, claims and/or damage arising out of or in connection with the aforesaid Agreement.  Greyhound Lines, Inc. begs leave to refer to the Agreement for its complete terms and conditions.

NINETY-SEVENTH:  By reason of all of the above and the Agreement, Greyhound Lines, Inc. is entitled to either complete indemnification or partial indemnity by contract from co-defendant, GOODYEAR for any verdict, judgment or settlement reached in this action against Greyhound Lines, Inc., together with costs, expenses, disbursements and attorneys' fees.

### AS AND FOR A FOURTH CROSS-CLAIM
### AGAINST CO-DEFENDANT
### THE GOODYEAR TIRE & RUBBER COMPANY ("GOODYEAR")

(PROPERTY DAMAGE/ECONOMIC LOSS)

NINETY-EIGHTH:  Defendant, Greyhound Lines, Inc., repeats and realleges each and every allegation above set forth in paragraphs "FIRST" through "NINETY-SEVENTH as though fully set forth at length herein.

NINETY-NINTH:  Before the subject accident, the subject bus was leased by Greyhound Lines, Inc. from the Bank of Oklahoma, N.A. pursuant to a Master Lease Agreement dated February 16, 2000 (hereinafter referred to as "the Master Lease").  Greyhound Lines, Inc. begs leave to refer to the Master Lease at the time of trial.

ONE HUNDREDTH:  The Master Lease was in effect at the time of the subject accident.

ONE HUNDRED-FIRST:  After the subject accident, and pursuant to the terms of the Master Lease, Greyhound Lines, Inc. replaced the subject bus with another bus of the same type and manufacturer that was owned by Greyhound Lines, Inc. (hereinafter referred to as "the replacement bus").

ONE HUNDRED-SECOND:  Pursuant to the terms of the Master Lease, Greyhound Lines, Inc. transferred title of the replacement bus to the Bank of Oklahoma, N.A.

ONE HUNDRED-THIRD:  After and since the subject accident, and due to the subject accident, Greyhound Lines has paid and/or will continue to pay no-fault benefits.

ONE HUNDRED-FOURTH:  As a result of all of the foregoing, Greyhound Lines, Inc. has been damaged and continues to be damaged, and has sustained loss including but not limited to property damage, economic loss, business interruption, loss of revenue and loss of income.

ONE HUNDRED-FIFTH:  Greyhound, Lines, Inc.'s damages and losses as described above are due to, among other things, GOODYEAR's: wrongful conduct; acts; omissions;

383157.1

17

negligence, carelessness and/or recklessness (including but not limited to negligence, carelessness and/or recklessness in the design, construction, assembly, fabrication, manufacturer, service, maintenance and/or repair of the G409 tires, including the left front tire); breach of the Agreement; breach of contract; breach of warranties (including but not limited to those in the Agreement and those created by operation of law); and/or strict products liability.

ONE HUNDRED-SIXTH:  The amount in controversy pertaining to the damages and losses suffered by Greyhound Lines, Inc. exceeds $75,000 exclusive of interest.

ONE HUNDRED-SEVENTH:  Greyhound Lines, Inc. has been damaged and continues to be damaged by GOODYEAR's conduct and is entitled to damages in an amount in excess of $75,000.  Greyhound Lines, Inc. is entitled to recover all of the damages and losses described above from GOODYEAR.  Greyhound Lines, Inc. is also entitled to interest since the date of the subject accident.

WHEREFORE, defendant, GREYHOUND LINES, INC., demands:

1.     Judgment dismissing the Amended Complaint;

2.     In the event that the Amended Complaint is not dismissed, then full or partial indemnity with respect to the first and third cross-claims;

3.     In the event that full indemnity is not granted, then contribution pursuant to the second cross-claim in accordance with degrees of wrongdoing;

4.     Judgment against GOODYEAR on the fourth cross-claim in a sum in excess of $75,000 plus interest; and

5.    Together with the costs and disbursements of this action.

Dated:    New York, New York
April 23, 2008

Yours, etc.,

FABIANI COHEN & HALL, LLP

Kevin B. Pollak (KBP 6098)
Attorneys for Defendant
GREYHOUND LINES, INC.
570 Lexington Avenue, 4th Floor
New York, New York  10022
(212) 644-4420

TO:   OFFICE OF JAY H. TANENBAUM
Attorneys for Plaintiff
LIONEL CADELIS
110 Wall Street, 16th Floor
New York, New York  10005
(212) 422-1765

CHAPMAN, ZARANSKY LAW FIRM
Attorneys for Plaintiff
LIONEL CADELIS
114 Old Country Road, Suite 680
Mineola, New York  11501
(516) 741-6601 ext. 226

HERRICK, FEINSTEIN, LLP
Attorneys for Defendant
THE GOODYEAR TIRE & RUBBER COMPANY
2 Park Avenue
New York, New York  10016
(212) 592-1400

Cadelis v. Greyhound Lines, Inc. and The Goodyear Tire & Rubber Company
08 CIV 2439 (PKL)
Our File No. 818.34464

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing **ANSWER TO AMENDED COMPLAINT AND CROSSCLAIMS** was served CM/ECF and First-Class Mail, postage prepaid, this 24th day of April, 2008, to:

> **OFFICE OF JAY H. TANENBAUM**
> **Attorneys for Plaintiff**
> **LIONEL CADELIS**
> **110 Wall Street, 16th Floor**
> **New York, New York 10005**
> **(212) 422-1765**
>
> **CHAPMAN, ZARANSKY LAW FIRM**
> **Attorneys for Plaintiff**
> **LIONEL CADELIS**
> **114 Old Country Road, Suite 680**
> **Mineola, New York 11501**
> **(516) 741-6601 ext. 226**
>
> **HERRICK, FEINSTEIN, LLP**
> **Attorneys for Defendant**
> **THE GOODYEAR TIRE & RUBBER COMPANY**
> **2 Park Avenue**
> **New York, New York 10016**
> **(212) 592-1400**

Kevin B. Pollak (6098)

Sworn to before me this
24th day of April, 2008.

NOTARY PUBLIC

APRIL D SMITH LITTLE
Notary Public, State of New York
No. 01SM6085371
Qualified in Bronx County
Commission Expires 6 / 01 / 20 _ 11

384392.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

LIONEL CADELIS,

                                    Plaintiff,                              08 CIV 2439 (PKL)

                    v.                                                      [Related to
                                                                            06 CIV 13371 (PKL)]

GREYHOUND LINES, INC., and THE GOODYEAR
TIRE & RUBBER COMPANY,                                                      JURY TRIAL
                                                                           DEMANDED
                                    Defendants.
-----------------------------------------------------------------X
GREYHOUND LINES, INC.,

                                    Third-Party Plaintiff,

                    v.

MOTOR COACH INDUSTRIES, INC. and UGL
UNICCO, Formerly Known As UNICCO Service
Company,

                                    Third-Party Defendants.
-----------------------------------------------------------------X

## THIRD-PARTY COMPLAINT

FABIANI COHEN & HALL, LLP
Attorneys for Defendant/Third-Party Plaintiff
GREYHOUND LINES, INC.
570 Lexington Avenue, 4th Floor
New York, New York  10022
(212) 644-4420

To:  Attorney(s) for:
Sir(s):

        PLEASE TAKE NOTICE that a                        of which the within is a (true) (certified)
copy

        [ ]NOTICE OF ENTRY *was duly entered in the within named court on*          2008

        [ ]NOTICE OF SETTLEMENT *will be presented for settlement to the Hon.*
        *one of the judges of the within named court at the Courthouse at* on    ,    2008 at        o'clock

Dated:

Yours, etc.,
FABIANI COHEN & HALL, LLP
Attorneys for Defendant/Third-Party Plaintiff
570 Lexington Avenue, 4th Floor
New York, New York  10022
(212) 644-4420

To:

Attorney(s) for: